J-S65013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LANCE MOORE | : | |
| | : | |
| Appellant | : | No. 510 MDA 2019 |

Appeal from the Judgment of Sentence Entered October 2, 2018
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000805-2017

BEFORE: PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:            **FILED MAY 19, 2020**

Lance Moore appeals from the judgment of sentence imposed October 2, 2018, in the York County Court of Common Pleas, made final by the denial of post-sentence motions on February 27, 2019. On July 11, 2018, a jury convicted Moore of indecent assault (by forcible compulsion) and criminal attempt to commit involuntary deviate sexual intercourse ("IDSI") (by forcible compulsion).[1] The trial court sentenced Moore to an aggregate term of 123 to 246 months' incarceration. The court also determined Moore met the criteria for classification as a sexually violent predator ("SVP") pursuant to Subchapter

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3126(a)(2) and 901(a), respectively.

H of the Pennsylvania's Sexual Offender Registration and Notification Act ("SORNA II").[2] On appeal, Moore alleges the trial court erred: (1) by improperly penalizing him for maintaining his innocence when the court imposed a sentence in the aggravated range after noting that Moore had shown no remorse at sentencing; (2) by designating him an SVP and finding there was sufficient evidence to support that determination. Based on the following, we affirm.

On January 13, 2017, Moore sexually assaulted his 81-year-old mother ("the victim") at her home where she lived with Moore. He was charged with rape, sexual assault, indecent assault, attempted IDSI, and incest. At the conclusion of a one-day trial on July 11, 2018, a jury found him guilty of indecent assault and attempted IDSI, and not guilty of the remaining charges. That same day, the court ordered a presentence investigation report, and directed the Commonwealth to secure an assessment of Moore to determine if he met the criteria for classification as an SVP.[3]

On October 2, 2018, the court conducted a combined SVP and sentencing hearing. The trial court agreed with the Sexual Offender Assessment Board's ("SOAB") assessment that Moore met the criteria for

---

[2] **See** 42 Pa.C.S.A. §§ 9799.10-9799.41.

[3] **See** 42 Pa.C.S.A. § 9799.24.

classification as an SVP as a Tier III offender.[4] The court then sentenced him to a term of 21 to 42 months' incarceration for the indecent assault conviction,[5] and a consecutive term of 102 to 204 months' imprisonment for the attempted IDSI crime.[6] Moore filed a post-sentence motion, which was denied February 27, 2019. This timely appeal followed.[7]

In Moore's first argument, he complains the trial court improperly penalized him for maintaining his innocence when it imposed an aggravated range sentence after finding he had "shown no remorse whatsoever" for the offenses he denied committing. Appellant's Brief, at 18.

Moore's issue concerns a challenge to the discretionary aspects of his sentence, and, accordingly, is not appealable as of right, but "must be considered a petition for permission to appeal." ***Commonwealth v. Best***, 120

---

[4] 42 Pa.C.S.A. § 9799.14(d).

[5] The indecent assault offense was graded as a first-degree misdemeanor. Moore had a prior record score ("PRS") of five, and the offense gravity score ("OGS") was five. The standard range sentence was one-and-a-half to three years' incarceration. Therefore, Moore's 21-to-42 months' sentence was in the aggravated range. ***See*** N.T., 10/2/2018, at 48.

[6] The attempted IDSI conviction was graded as a first-degree felony. Moore had a PRS of five, and OGS was 11. The standard range sentence was 72 to 90 months' imprisonment. Accordingly, Moore's 102-to-204 months' sentence was also in the aggravated range. ***See*** N.T., 10/2/2018, at 48-49.

[7] On March 28, 2019, the court ordered Moore to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b). Moore complied with the court's directive, and filed a concise statement, on April 18, 2019. On May 10, 2019, the trial court issued an opinion under Pa.R.A.P. 1925(a).

A.3d 329, 348 (Pa. Super. 2015) (quotation omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted).

Here, Moore's appeal is in technical compliance with the requirements to challenge the discretionary aspects of his sentence. Moore filed a timely appeal and a post-sentence motion, and he provided a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we must determine whether Moore has presented a substantial question.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citations and quotation marks omitted).

Relying on *Commonwealth v. Bowen*, 975 A.2d 1120 (Pa. Super. 2009), Moore states he raised a substantial question by arguing that his aggravated range sentence was based on an unconstitutional factor – specifically, the court violated his constitutional rights against self-

incrimination "when it sentenced [him] more harshly because he did not concede guilt at sentencing and continued to maintain his innocence." Appellant's Brief, at 19. In **Bowen**, a panel of this Court determined an appellant raised a substantial question where he asserted that his aggravated range sentence was based on an unconstitutional factor. **See Bowen**, 975 A.2d at 1122. Accordingly, we conclude Moore has raised a substantial question, and we will consider the merits of his claim.

We begin with our well-settled standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Shugars**, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted). Additionally, we are bound by the statutory dictates of 42 Pa.C.S.A. § 9781(c), which are, in pertinent part, as follows:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

…

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]

42 Pa.C.S.A. § 9781(c)(3).[8]

In **Bowen**, the defendant was charged with multiple offenses, including simple assault and terroristic threats. He invoked his constitutional right not to testify during the jury trial, and maintained his silence at sentencing. The court imposed a standard range sentence for the simple assault crime and a consecutive, aggravated range sentence for the terrorist threats conviction. In justifying the aggravated range sentence, the court "noted [the defendant]'s poor employment history, long history of recidivism, and the victim's emotional trauma. The court also indicated that [the defendant] failed to show any remorse for his crimes or to take responsibility for them, even after the jury's decision." **Bowen**, 975 A.2d at 1121-1122. On appeal, the defendant argued that "the trial court violated his Fifth Amendment rights by considering his silence as reflective of his lack of remorse." **Id.** at 1122.

---

[8] Additionally, "[w]hen imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." **Commonwealth v. Griffin**, 804 A.2d 1, 10 (Pa. Super. 2002) (citation omitted). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics, and his potential for rehabilitation." **Id**. A court must also impose a sentence that is consistent with not only protection of the public, but also the gravity of the offense as it relates to the impact on the life of the victim and community. **See** 42 Pa.C.S.A. § 9721(b). Where the court had the benefit of a presentence investigation report ("PSI"), we assume the court "was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988).

The ***Bowen*** Court held that based on prior case law,[9] "it is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs." ***Id.*** at 1125 (citation omitted). In other words, "silence at sentencing may not be the sole factor in determining a defendant's lack of remorse." ***Id.*** at 1121. The ***Bowen*** Court further held that "a court may not consider a defendant's silence at sentencing as indicative of his failure to take responsibility for the crimes of which he was convicted." ***Id.*** The panel concluded that although the trial court had improperly relied upon Bowen's silence at sentencing, a remand for resentencing was avoidable because the trial court cited numerous other factors in imposing the defendant's sentence. ***See id.*** at 1128.

Turning the present matter, Moore misconstrues ***Bowen*** by stating that the court improperly sentenced him for showing no remorse and erred by penalizing him for maintaining his innocence. ***See*** Appellant's Brief, at 18. As the trial court properly opined:

> In the instant case, and unlike the [d]efendant in ***Bowen***, [Moore] was not silent at sentencing, but instead made a lengthy statement where he blamed everyone else and went on at length about himself, his life, and how this conviction would affect him. Moreover, [Moore]'s lack of remorse was but one factor among

---

[9] ***See Mitchell v. United States***, 526 U.S. 314 (1999); ***Commonwealth v. Begley***, 780 A.2d 605 (Pa. 2001).

several that the [t]rial [c]ourt considered in imposing an aggravated range sentence. In addition, it was considered specifically in relation to the gravity of the offense for which [Moore] was convicted.

Trial Court Opinion, 5/10/2019, at 4-5 (record citations omitted).

Accordingly, **Bowen** is distinguishable from the present matter because Moore did not invoke his right to remain silent at his sentencing hearing. **See** N.T., 10/2/2018, at 22-44 (Moore's allocution at sentencing). Furthermore, our review of the sentencing hearing reveals the trial court did not abuse its discretion when imposing Moore's aggravated range sentences. Rather, the trial court properly considered his lack of remorse as one factor when imposing sentences that were consistent with the protection of the public, took into account the gravity of the offense as it related to the impact on the life of the victim and on the community, and considered Moore's rehabilitative needs pursuant to Section 9721(b). **See Bowen**, 975 A.2d at 1125. **See also** N.T., 10/2/2018, at 49-50; Memorandum Order Denying Defendant's Post-Sentence Motion, 2/27/2019, at 9-11. Therefore, Moore's first argument fails.

Next, Moore claims that his SVP designation must be vacated because it was entered in violation of this Court's decision in **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) ("**Butler I**"), and cannot be salvaged based on the notion that the court made the designation "beyond a reasonable doubt." Appellant's Brief, at 22. He states:

Although the legislature passed Act 10 of 2018, which created a new registration scheme for retroactive application, it left the SVP designation procedure unchanged. And though the sentencing

- 8 -

court purported to obviate the problem by claiming to find beyond a reasonable doubt that Moore is an SVP, the clear-and-convincing standard cannot be severed from the defective designation procedure and the evidence fell well short of proof beyond a reasonable doubt.

*Id.*

A challenge to the legality of a sentence is a question of law. Therefore, our standard of review is *de novo*, and our scope of review is plenary. ***See Commonwealth v. Hawkins***, 45 A.3d 1123, 1130 (Pa. Super. 2012).

Preliminarily, we note this Court's decision in ***Butler I*** was recently reversed by the Pennsylvania Supreme Court. ***See Commonwealth v. Butler***, ___ A.3d ___ [25 WAP 2018] (Pa., filed March 26, 2020) ("***Butler II***"). Nevertheless, it is imperative to delineate the historical background that led to our Supreme Court's decision in ***Butler II***.

In 2011, the Pennsylvania General Assembly passed SORNA I[10] in order to comply with the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, *as amended*, 34 U.S.C. §§ 20911, *et seq.* However, in ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017), a plurality of the Pennsylvania Supreme Court concluded the registration requirements of SORNA I, as applied retroactively, were punitive pursuant to the seven-factor test set forth by the United States Supreme Court in ***Kennedy v. Mendoza-Martinez***, 372 U.S. 144 (1963), and therefore unconstitutional under the *ex*

---

[10] Act of Dec. 20, 2011, P.L. 446, No. 111, *as amended*, 42 Pa.C.S. §§ 9799.10 to 9799.41 (effective Dec. 20, 2012).

*post facto* clauses of the United States and Pennsylvania Constitutions. *See Muniz*, 164 A.3d at 1223.

Subsequently, in *Butler I*, a divided, three-judge panel of this Court addressed the issue of whether the procedure for making SVP determinations under 42 Pa.C.S.A. § 9799.24(e)(3) was unconstitutional. The *Butler I* Court stated "*Muniz* was a sea change in the longstanding law of this Commonwealth as it determined that the registration requirements under SORNA are not civil in nature but a criminal punishment." *Butler I*, 173 A.3d at 1215. Extrapolating from *Muniz*, the *Butler I* Court concluded the statutory mechanism for designating a defendant as an SVP under Section 9799.24(e)(3) was "constitutionally flawed" pursuant to the United States Supreme Court's decisions in *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the statute designated the trial court as the fact-finder in all instances and specified "clear and convincing" evidence as the burden of proof. *Butler I*, 173 A.3d at 1218.

Accordingly, the *Butler I* Court held: "[A] factual finding, such as whether a defendant has a mental abnormality or personality disorder that makes him … likely to engage in predatory sexually violent offenses, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder." *Id.* The *Butler I* Court stated that "trial courts may no longer designate convicted defendants as SVPs, nor may they hold SVP hearings, until our General Assembly enacts a constitutional designation

- 10 -

mechanism." **Id.** Furthermore, the **Butler I** panel determined lifetime registration, notification, and counseling requirements ("RNC requirements") applicable to SVPs, pursuant to 42 Pa.C.S.A. § 9799.15, 9799.16, 9799.26, 9799.27, and 9799.36, constituted increased criminal punishment that were in violation of **Alleyne**/**Apprendi**.

In response to **Muniz** and **Butler I**, the Pennsylvania General Assembly enacted legislation to amend several provisions of SORNA and to provide for several new sections. **See** Act of Feb. 21 2018, P.L. 27, No. 10 ("Act 10").[11] Subsequently, the Governor of Pennsylvania signed new legislation, effective June 12, 2018, that struck the Act 10 amendments and reenacted certain SORNA provisions. **See** Act of June 12, 2018, P.L. 1952, No. 29 ("Act 29"). **See Commonwealth v. Alston**, 212 A.3d 526, 529 (Pa. Super. 2019). Act 10 and Act 29 are collectively known as "SORNA II." **See Commonwealth v. Lee Andrew Moore**, 222 A.3d 16 (Pa. Super. 2019).

In relevant part, SORNA II created Subchapter H, which imposes certain obligations on offenders who committed offenses on or after December 20, 2012 (the date SORNA I became effective).[12] Subchapter H included a provision, which allowed SVPs, and other lifetime registrants, the opportunity to petition for removal from the registry after 25 years.

---

[11] **See** 42 Pa.C.S.A. §§ 9799.42, 9799.51-9799.75.

[12] Subchapter H is applicable to the present case where Moore committed the sexual offense on January 13, 2017.

- 11 -

SORNA II also added Subchapter I, which is applicable to offenders who are convicted of certain offenses on or after April 22, 1996 but before December 20, 2012. *Muniz* directly applied to Subchapter I offenders.

During this time, the Commonwealth filed a petition for allowance of appeal in *Butler I*, which our Supreme Court granted to address the issue of whether the procedure used to designate certain individuals convicted of sexual offenses as SVPs, codified at Section 9799.24(e)(3), was constitutionally permissible in light of its decision in *Muniz*. *See Butler II*, __ A.3d __, __ [25 WAP 2018, *1] (Pa., filed March 26, 2020). "[T]he parties dispute[d] whether the *Muniz* Court's holding regarding criminal punishment automatically applies to all individuals falling under the purview of SORNA, including SVPs, or whether a separate analysis of the RNC requirements must be conducted with a specific focus on SVPs." *Butler II*, __ A.3d __, __ [25 WAP 2018, *6] (Pa., filed March 26, 2020).

Specifically, the Commonwealth contended that *Muniz* did not control because SVPs were subject to their own body of case law, which provided that "the government is empowered to address the heightened danger posed by SVPs through measures beyond those imposed on non-SVPs without the resulting approach constituting criminal punishment." *Id.*, at *16 (citation and quotation marks omitted). Whereas the appellee responded that *Butler I* was proper in light of *Muniz*. Moreover, the appellee asserted the entirety of Subchapter H, including the SVP scheme, remains increased criminal

punishment and the recent changes "did not render Subchapter H nonpunitive as the statute continues to require strict compliance and its enforcement provisions remain in the crimes code." *Id.*, at *26.

In reversing, the **Butler II** Court pointed out that the **Butler I** panel "concluded **Muniz** was dispositive – without conducting any analysis regarding either the differences between the RNC requirements and the requirements at issue in **Muniz** or the differences between SVPs and other sex offenders." **Butler II**, ___ A.3d ___, ___ [25 WAP 2018, *4] (Pa., filed March 26, 2020).

The **Butler II** Court opined:

SVPs are different from the non-SVP SORNA registrants at issue in **Muniz** due to heightened public safety concerns based on the determination SVPs have "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. §9799.12. Therefore, a simple extrapolation from the analysis in **Muniz** is insufficient to determine whether the RNC requirements constitute criminal punishment.

**Butler II**, ___ A.3d ___, ___ [25 WAP 2018, *30-31] (Pa., filed March 26, 2020).

The Supreme Court then conducted an examination of the RNC requirements as applicable to SVPs using the two-part inquiry employed in both **Commonwealth v. Williams**, 832 A.2d 962 (Pa. 2003) ("**Williams**

***II***")[13] and ***Muniz***.[14] First, the ***Butler II*** Court determined the General Assembly's intention with respect to Subchapter H was nonpunitive in nature. ***Butler II***, \_\_\_ A.3d \_\_\_, \_\_\_ [25 WAP 2018, *31-34] (Pa., filed March 26, 2020). Next, the Court considered the ***Mendoza-Martinez*** factors[15] and determined

---

[13] In ***Williams II***, the Pennsylvania Supreme Court determined the RNC requirements of SORNA's predecessor, Megan's Law II, were constitutional and not intended to be criminal punishment in nature.

[14] The two-part inquiry is set forth in ***Muniz*** as follows:

> We first consider whether the General Assembly's "intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent." If we find the General Assembly intended to enact a civil scheme, we then must determine whether the law is punitive in effect by considering the ***Mendoza-Martinez*** factors. We recognize only the "clearest proof" may establish that a law is punitive in effect. Furthermore, in determining whether a statute is civil or punitive, we must examine the law's entire statutory scheme.

***Muniz***, 164 A.3d at 1208, *quoting* ***Williams II***, 832 A.2d at 971.

[15] The ***Mendoza-Martinez*** test is a balancing of the following factors:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment--retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

***Williams II***, 832 A.2d at 973 (citation omitted).

the punitive factors did not outweigh the nonpunitive ones. *Id.*, at *34-44.

The Court opined:

> Although we recognize the RNC requirements impose affirmative disabilities or restraints upon SVPs, and those requirements have been historically regarded as punishment, our conclusions in this regard are not dispositive on the larger question of whether the statutory requirements constitute criminal punishment. This is especially so where the government in this case is concerned with protecting the public, through counseling and public notification rather than deterrent threats, not from those who have been convicted of certain enumerated crimes, but instead from those who have been found to be dangerously mentally ill. Under the circumstances, and also **because we do not find the RNC requirements to be excessive in light of the heightened public safety concerns attendant to SVPs, we conclude the RNC requirements do not constitute criminal punishment**.

*Id.*, at *44 (citation omitted; emphasis added). The Court further held "the procedure for designating individuals as SVPs under Section 9799.24(e)(3) is not subject to the requirements for *Apprendi* and *Alleyne* and remains constitutionally permissible." *Id.*, at *2.

Turning the present matter, in light of the Supreme Court's decision in *Butler II*, we conclude the trial court did not err in conducting an SVP hearing and designating Moore an SVP pursuant to Section 9799.24(e)(3). Accordingly, his second argument fails.[16]

_____

[16] We note:

> When th[e Pennsylvania Supreme] Court issues a ruling that overrules prior law, expresses a fundamental break from precedent, upon which litigants may have relied, or decides an issue of first impression not clearly foreshadowed by precedent,

- 15 -

Lastly, Moore asserts there was insufficient evidence to support his SVP

determination. Specifically, he states:

> Even the Commonwealth's expert, Dr. Stein, acknowledged Moore
> had no prior sex offenses and his alleged paraphilia only
> manifested at the age of 47. And he announced no standard at all
> for the strength of his determination, stating only that he believed
> Moore "meets the criteria for a sexually violent predator * * * to
> a degree of scientific certainty…." The court, armed with less
> information and expertise than Dr. Stein on this matter, was in no
> position to go beyond Dr. Stein's findings and deem Moore to be
> an SVP under a higher standard.

Appellant's Brief, at 30-31 (record citations omitted).

"[I]n reviewing the sufficiency of the evidence regarding the

determination of SVP status, we will reverse the trial court only if the

Commonwealth has not presented clear and convincing evidence sufficient to

enable the trial court to determine that each element required by the statute

has been satisfied." **Commonwealth v. Moody**, 843 A.2d 402, 408 (Pa.

Super. 2004) (citation omitted).

> Clear and convincing evidence means that witnesses must be
> found to be credible, that the facts to which they testify are

---

> th[e Supreme] Court announces a new rule of law. One of the
> hallmarks of whether th[e Supreme] Court has issued a new rule
> of law is if the decision overrules, modifies, or limits any previous
> opinions of th[e Supreme] Court. While retroactive application of
> a new rule of law is a matter of judicial discretion usually exercised
> on a case-by-case basis, the general rule is that the decision
> announcing a new rule of law is applied retroactively so that a
> party whose case is pending on direct appeal is entitled to the
> benefit of the changes in the law.

**In the Interest of L.J.**, 79 A.3d 1073, 1087 (Pa. 2013) (quotations and
quotation marks omitted).

distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*Id.* (citation and internal quotation marks omitted). A sexually violent predator is defined as "an individual who committed a sexually violent offense" and "who is determined to be a sexually violent predator ... due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12.

There is no dispute that Moore has been convicted of a sexually violent offense. As a result, Moore's issue turns on whether the evidence was sufficient to establish that he suffers from an abnormality that makes him likely to reoffend. Subchapter H sets out several areas that need to be considered when making an SVP determination:

(1) Facts of the current offense, including:

    (i) Whether the offense involved multiple victims.

    (ii) Whether the individual exceeded the means necessary to achieve the offense.

    (iii) The nature of the sexual contact with the victim.

    (iv) Relationship of the individual to the victim.

    (v) Age of the victim.

    (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

    (vii) The mental capacity of the victim.

(2) Prior offense history, including:

    (i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b).

Here, the trial court explained its rationale in designating Moore as an SVP as follows:

The only evidence presented at the SVP hearing was the uncontradicted testimony of Dr. Robert Stein. Dr. Stein testified as to his qualifications to perform an SVP Assessment. Dr. Stein has been a member of the Pennsylvania Sexual Offenders Assessment Board since 1998, and has performed approximately 2500 assessments. Defense Counsel questioned Dr. Stein on cross-examination as to his qualifications, and did not object to him testifying as an expert in the area of sex offender assessments.

Dr. Stein conducted an SVP Assessment on August 27, 2018, and issued a report regarding that assessment. Despite [Moore]'s contention to the contrary, Dr. Stein was not vague in his testimony. Dr. Stein considered the fifteen (15) different factors set forth in the statute for their relevance as to the opinions of mental abnormality and predatory behavior. Dr. Stein considered the following factors to be relevant in this case:

- 18 -

- There was [s]ignificant force used as reported by the Victim; and

- The acts [Moore] was convicted of included attempt at penetrative sexual assault;

- The fact that the Victim is [Moore]'s mother, which is consistent with deviant sexual interest; and

- The fact that the Victim was 81 years of age at the time and that given her age, she would have been less able to defend herself than a younger person. This factor is consistent with predatory behavior; and

- [Moore]'s prior criminal record because when a [d]efendant has had four (4) or more sentencing dates, that is associated with increased risk; and

- [Moore]'s history of violent behavior, which includes an assault charge and Protection From Abuse orders; and

- [Moore]'s history of multiple probation violations pertaining to prior DUI's, which is consistent with antisocial traits; and

- [Moore]'s history of illegal drug usage, which was not considered a serious matter in this case; and

- [Moore]'s history of prior psychiatric diagnoses involving Bipolar disorder, but there was not enough information to really determine its relevance; and

- In regard to behavioral characteristics contributing to the individual's conduct, prior PFA's and multiple convictions for assault crimes indicate a sustained pattern of physical violence with at least one of these acts of physical violence against the victim in this case.

Dr. Stein also indicated that not all of these factors are indicative of the sexually violent predator, there are no minimum number of factors that indicate a sexually violent predator, and the factors are not weighted.

After performing his assessment, Dr. Stein determined that Defendant meets the criteria for a sexually violent predator, he

explained his reasons for that conclusion, and he indicated that this conclusion was rendered to a degree of professional certainty.

Trial Court Opinion, 5/10/2019, at 2-3 (record citations omitted).

Additionally, it merits mention that when asked why Dr. Stein opined that Moore met the criteria for an SVP, the expert testified to following:

> While this was a single episode of sexual assault, the victim reported that there had been threats in [a] letter that prior summer, statements some years prior to the instant offense.
>
> With the first mention of sexual relationship with his mother, especially in the context of prior violence against his mother, [Moore] demonstrated deviant interest in [sexually] victimizing his mother with the offense this interest was acted upon.
>
> If he had never acted upon it, he would not meet the criteria for paraphilic disorder, but in acting upon it, he does meet the criteria because he let these things -- he lost control of these thoughts and engaged in the actual sexual assault.
>
> [There is] sufficient evidence for a paraphilic disorder of nonconsent. In other words, sexual interest in a nonconsenting sexual interaction.

N.T., 10/2/2018, at 14-15.

We conclude this evidence was sufficient to support the trial court's finding that Moore is an SVP. Accordingly, his final issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/19/2020

- 20 -